J. S15043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| YUWSHA ALWAN, | : | No. 1492 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, March 30, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0012299-2011

BEFORE:  STABILE, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 01, 2018**

Yuwsha Alwan appeals from the March 30, 2017 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

A prior panel of this court on direct appeal set forth the relevant facts of this case as follows:

> On March 31, 2008, Nicholas Pisano was shot in his apartment at 356 N. Front Street in Philadelphia.  Emergency personnel took him to Hahnemann University Hospital, where he died on that same day.  He was twenty-five years old at the time of his death.
>
> Philadelphia Police Officer Quinten White was the first police officer to arrive at the scene of the shooting, where he observed a small quantity of marijuana on a living room table and a [MAC-10] automatic

weapon in the bedroom, on the bed, partially covered by a sheet. [Officer White] spoke to Joshua McDonald, who was in the apartment at the time of the shooting, and who told him that two [b]lack men in their [thirties] wearing dark clothing came to the door purporting to be making a pizza delivery, and that the men shot Pisano and then fled the scene. As Officer White was pulling up to the scene, he inadvertently drove over a pizza box.

\* \* \*

[McDonald] came to visit Pisano in the afternoon on the day of the shooting. He and Pisano watched a movie and played video games together. While the movie was playing, an African-American man with what McDonald described as a "Muslim-sounding name" came to the door and spoke with Pisano for about five minutes. Pisano briefly introduced him to McDonald, but McDonald [could] not recall his name or identify him.

Later that night, McDonald heard a knock on the door and a male voice saying "pizza delivery." Pisano replied "we already got our food[,]" as the two men had ordered delivery earlier. The voice said[,] "well, just open the door." Pisano said[,] "[i]t must be around back. It happens all the time." Again, the voice said "just open the door."

McDonald did not feel comfortable with the interaction, which did not feel "right" to him, so he retrieved the gun that Pisano had shown him earlier in the evening, which was hidden in the couch where he was sitting. As [McDonald] reached down for the gun, he heard a

shot. When he looked up, Pisano had fallen. He saw someone coming through the doorway and he pointed the gun toward them and tried to shoot. When he pulled the trigger, nothing happened, but the intruder ran. He saw a second man, but did not get a good look at him. He gave a statement to [h]omicide detectives a few hours after the shooting, in which he identified the shooter as [Joseph] Harville.[1]

> [1] Harville is [appellant's] nephew.

Trial Court Opinion ("T.C.O."), 11/13/2013, at 2–5 (citations to notes of testimony omitted).

Homicide detectives found approximately seven pounds of marijuana in Pisano's apartment, which they estimated to have a street value of $31,728. They also obtained surveillance video from a security camera located outside of Pisano's apartment building. Clyde Frazier, an officer with the Philadelphia Police Department's Crime Scene Unit, recovered fingerprints from the pizza box found outside of Pisano's apartment and matched those prints to Robert Gray, Harville's life-long friend. At the time of the shooting, Gray had known [appellant] through Harville for approximately three or four years.

> After finding out that his fingerprints had been identified on the pizza box and [that] the police had video footage of him with Harville outside of Pisano's [apartment] building on the night of the shooting, Gray gave a full confession to his involvement in the shooting. The surveillance video depicts Gray and Harville walking back and forth outside of [Pisano's] building, [with] Gray holding a pizza box and Harville with his hands in his pockets.

In his statement of April 4, 2008, [Gray] said the following about what happened four days earlier on the night of the shooting:

> [W]e just hung out for a little while, that's when [appellant] starts talking about this dude that had all this weed. He said he just left the boy's house and the guy had like ten pounds of weed in the dryer and some on his countertop. He said the boy had a lot of money in a Nike box under the table in the back room where the dog was. [Appellant] was like 'we should roll on the boy.' He said the guy was a punk and that we wouldn't have to do nothing but scare the boy. We all agreed and then [appellant] gave [Harville] the gun.

[Gray explained that,] after ordering a pizza and driving to pick it up, the three defendants proceeded as follows:

> I parked the car under the bridge around the corner from the boy's house, then me and [Harville] and [appellant] walked around to the house. [Appellant] walked a little bit behind us and showed us where the house was at. Then he stayed back while me and [Harville] went to the dude's house. I walked up the steps first and [Harville] was behind me. I still had the pizza with me. And when [Harville] rang the doorbell, he says '[d]elivery.' The guy inside opens the door and says 'wrong bell. You want the back.' He had a Bible in his

hands and said like two more times 'you want the back.' He's like, 'I'm telling you, you got the wrong apartment. It happens all the time. You want the back door.' I said, 'no I want some weed.' He was like, 'you definitely got the wrong house.'

That's when [Harville] come up behind and he pushes past me. He knocked the pizza out of my hand when [he] pushed me. As [Harville] pushed past me, the guy must have seen the gun because he looked shocked. That's when I noticed [there] was another guy inside on the couch . . . . The guy on the couch grabs a gun from under a pillow. [He s]tood up pointing at us. At that point I ducked and started to run. That's when [Harville] shot. I was already down the steps by the time [Harville] shot then I was gone. I ran to the car and [appellant] was already in the driver's seat. I got in the backseat and [Harville] came up behind me and got into the front passenger seat. He still had the gun in his hand. Then we just took off.

*Id.* at 3–4.

William Shute, a special agent with the Federal Bureau of Investigation [(hereinafter, "Special Agent Shute")], analyzed [appellant's] cellular phone records from March 31, 2008 through April 10, 2008. Special Agent Shute's analysis revealed that [appellant] and Gray had exchanged seventy-five calls during that period. Twenty-nine of those calls took place on the day of the shooting and twenty-

- 5 -

three of them occurred on the following day. [Appellant] also made an outgoing call at 9:33 p.m. on March 31, 2008; approximately two minutes before Pisano was murdered. Based upon the location of the cellular tower that [appellant's] phone used to place that call, Special Agent Shute determined that it was made within several blocks of the shooting.

*Commonwealth v. Alwan*, 113 A.3d 353 (Pa.Super. 2014) (unpublished memorandum at *1-2), *appeal denied*, 126 A.3d 1281 (Pa. 2015).

The PCRA court, in turn, summarized the relevant procedural history of this case as follows:

On August 30, 2011, [appellant] was arrested and charged with Murder and related firearms offenses. On August 16 2013, before this Court, a jury convicted [appellant] of Second-Degree Murder, Conspiracy, and Robbery.[1] This Court immediately imposed a mandatory life sentence of imprisonment as to Second-Degree Murder, and a concurrent term of ten to twenty years of imprisonment as to Conspiracy.[2]

On November 19, 2014, Superior Court affirmed [appellant's] judgment of sentence. [*See id.*] On October 22, 2015, the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal. [*Id.*] On June 2, 2016, [appellant] filed a timely *pro se* [PCRA] petition. On July 18, 2016, [appellant] amended his *pro se* petition. On November 3, 2016, through retained counsel[3], [appellant] filed the instant Amended Petition. On January 10, 2017, the Commonwealth filed its response. On January 31, 2017, [appellant] supplemented his Amended

---

[1] 18 Pa.C.S.A. §§ 2502(b), 903, and 3701(a)(1), respectively.

[2] Appellant was represented during his jury trial by Robert M. Gamburg, Esq. ("trial counsel").

[3] Appellant was initially represented during his PCRA proceedings by David Cornish, Esq. ("PCRA counsel").

> Petition.  On February 21, 2017, this Court, finding [appellant's] claims meritless, filed a Notice of Intent to Dismiss under Pa.R.Crim.P. 907.  On March 3, 2017, [appellant] filed a **pro se** response.

PCRA court opinion, 3/30/17 at 1-2 (footnotes omitted).

As noted, on March 30, 2017, the PCRA court dismissed appellant's petition without a hearing.  While still represented by PCRA counsel, appellant filed additional **pro se** PCRA petitions on April 3 and 10, 2017.  The PCRA court subsequently dismissed these petitions on April 12, 2017.  On April 20, 2017, PCRA counsel filed a no-merit letter and petition to withdraw in accordance with **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1998) (**en banc**).  Thereafter, PCRA counsel filed a timely notice of appeal on appellant's behalf on April 27, 2017.  On May 2, 2017, the PCRA court granted PCRA counsel permission to withdraw.  On May 5, 2017, Lauren A. Wimmer, Esq. ("Attorney Wimmer"), entered her appearance and currently represents appellant on appeal.  The PCRA court did not order appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b).[4]

---

[4] The record reflects that on June 13, 2011, appellant's co-conspirator, Gray, pled guilty at CP-51-CR-00015175-2008 to third-degree murder, robbery, and related offenses.  On July 8, 2011, a jury found appellant's co-conspirator, Harville, guilty of second-degree murder, burglary, and related offenses at CP-51-CR-00012109-2008.  Thereafter, on March 15, 2016, a panel of this court affirmed the order dismissing Harville's PCRA petition.  **See Commonwealth v. Harville**, 144 A.3d 199 (Pa.Super. 2016) (unpublished memorandum).

Appellant raises a litany of ineffective assistance of counsel claims for our review. Specifically, appellant avers as follows:

I. Prior PCRA counsel was ineffective for failing to raise in the amended PCRA petition that trial counsel was ineffective for failing to investigate, develop, and produce alibi evidence.

II. PCRA counsel was ineffective for failing to raise in the amended PCRA petition that trial counsel was ineffective for failing to question Appellant's character witnesses regarding his reputation for truthfulness.

III. Trial counsel was ineffective for failing to thoroughly cross-examine the state's expert on the reliability of the cell phone evidence.

IV. Trial counsel was ineffective for failing to call a defense expert to dispute the Commonwealth's cell phone evidence.

V. Trial counsel was ineffective for failing to investigate co-conspirator, Robert Gray's rental vehicle.

VI. Trial counsel was ineffective for failing to object to the prosecutor's closing argument wherein he referenced September 11, 2001.

Appellant's brief at i-ii. Appellant further argues that the PCRA court denied his petition without conducting an evidentiary hearing on all the aforementioned issues raised in his PCRA petition. (*Id.* at 3, ¶ II.)[5]

---

[5] We recognize that Attorney Wimmer has properly briefed appellant's layered ineffectiveness claims by applying the three-prong ineffectiveness test to each level of representation in accordance with *Commonwealth v. Reid*, 99 A.3d 470, 482 (Pa. 2014). (*See* appellant's brief at 9-12, 14-15.)

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

Appellant's first six claims concern the effectiveness of his trial and/or PCRA counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable

> adjudication of guilt or innocence could have taken place.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks omitted; some brackets in original), citing 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), *appeal denied*, 30 A.3d 487 (Pa. 2011). Additionally, counsel is not ineffective for failing to raise a claim that is devoid of merit. *Commonwealth v. Ligons*, 971 A.2d 1125, 1146 (Pa. 2009).

Appellant first argues that PCRA counsel was ineffective for failing to argue in the November 3, 2016 amended PCRA petition that trial counsel was ineffective "for failing to investigate, develop, and produce alibi evidence." (Appellant's brief at 8.) Specifically, appellant contends that trial counsel had no strategic basis not to call Tiffany Mikell, appellant's then-wife, as an alibi witness at trial. (*Id.* at 9.) Appellant avers that Mikell "would have testified that [a]ppellant was with her at their home in Delaware taking care of their newborn child on the exact date and time of the incident." (*Id.* at 9-10.) This claim is meritless.

A claim that counsel was ineffective for failing to investigate potential witnesses or call them to testify at trial requires a petitioner to "establish that the witness existed and was available, that counsel was informed of the

witness' existence, that the witness was ready and willing to testify and that the absence of the witness prejudiced the defendant to a point where the defendant was denied a fair trial." ***Commonwealth v. Moser***, 921 A.2d 526, 531 (Pa.Super. 2007) (citation omitted).

Here, PCRA counsel had a reasonable basis not to raise trial counsel's purported ineffectiveness for failing to call Mikell as an alibi witness at trial because he was not aware of her existence at the time he filed the amended PCRA petition on appellant's behalf. The affidavit from Mikell that appellant attached to his brief as "Appendix C" and upon which he bases his claim is dated May 19, 2017, more than six weeks after the PCRA court dismissed appellant's PCRA petition. (***See*** appellant's brief at 10; Appendix C.) Additionally, neither appellant's initial ***pro se*** PCRA petition, his March 3, 2017 response to the Rule 907 notice, nor his subsequent April 3 and 10, 2017 petitions specifically identify Mikell as an alibi witness. (***See*** certified record at nos. 39P, 42P, and 43P.) Moreover, although appellant avers that PCRA counsel was made aware of trial counsel's failure to interview Mikell as an alibi witness via a March 6, 2017 letter, this letter is well beyond the date that PCRA counsel filed the amended petition on appellant's behalf, November 3, 2016, and contains no time-stamp or post-mark indicating it was received by counsel. (***See id.*** at 12; Appendix E.) Accordingly, appellant's ineffectiveness claim lacks arguable merit.

Appellant next argues that PCRA counsel was ineffective for failing to raise in the November 3, 2016 amended PCRA petition a claim that trial counsel was ineffective "for failing to question [a]ppellant's character witnesses regarding his reputation for truthfulness." (Appellant's brief at 13.) Appellant avers that this claim was properly preserved in his March 3, 2017 *pro se* response to the PCRA court's Rule 907 notice. (*Id.* at n.2.) The record belies this contention.

Courts in this Commonwealth have long recognized that claims of PCRA counsel's purported ineffectiveness must be specifically raised in a response to a Rule 907 notice or in a serial PCRA petition, or they are waived. *See Commonwealth v. Henkel*, 90 A.3d 16, 29 (Pa.Super. 2014), *appeal denied*, 101 A.3d 785 (Pa. 2014); *see also Commonwealth v. Pitts*, 981 A.2d 875, 879 n.3 (Pa. 2009) (holding that a petitioner waived any issue pertaining to the adequacy of PCRA counsel's representation where he failed to raise it in his response to the PCRA court's Rule 907 notice). Likewise, arguments which are undeveloped and lack citation to the certified record are waived. *See Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa.Super. 2006), *appeal denied,* 920 A.2d 831 (Pa. 2007); *see also* Pa.R.A.P. 2119(c).

Instantly, the record reveals that appellant's *pro se* response to the PCRA court's Rule 907 notice makes no mention of trial counsel's failure to specifically question any witnesses with regard to appellant's reputation for truthfulness. (*See* Rule 907 response, 3/3/17 at ¶¶ 1-7.) Rather, appellant's

argument on this issue is comprised primarily of boilerplate allegations of both trial and PCRA counsel's purported ineffective representation and does not specifically identify the witnesses trial counsel failed to question. Accordingly, appellant has waived this claim.[6]

Appellant's next two claims concern the cell phone evidence presented at trial. Appellant contends that "trial counsel was ineffective for failing to thoroughly cross examine the [Commonwealth's] expert, [Special Agent Shute] on the reliability of the cell phone evidence." (Appellant's brief at 16.) Appellant further avers that trial counsel was ineffective "for failing to call a defense expert to dispute the Commonwealth's cell phone evidence." (**Id.** at 19.) For the following reasons, we disagree.

Here, the PCRA court comprehensively discussed these ineffectiveness claims in its March 30, 2017 opinion and found that they were either meritless and/or appellant's trial counsel had a reasonable strategic basis for his decisions. Specifically, the PCRA court concluded as follows:

> [Appellant] contends that trial counsel was ineffective for failing to investigate and call an additional expert witness to rebut the Commonwealth cell phone tower analysis evidence and further failed to challenge

---

[6] Moreover, even if appellant had properly preserved this claim, we find that he has failed to show prejudice. "To establish . . . the prejudice element, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." **Commonwealth v. Roney**, 79 A.3d 595, 604 (Pa. 2013), **cert. denied**, 135 S.Ct. 56 (2014). A boilerplate or bald allegation of prejudice, as is the case here, "cannot satisfy a[n appellant's] burden to prove that counsel was ineffective." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1128 (Pa. 2011) (citations omitted).

expert witness [Agent Shute's] credentials. The mere failure to call an expert rebuttal witness is not **per se** ineffectiveness, and counsel need not introduce such expert if he effectively cross[-]examines the Commonwealth's witnesses and elicits helpful testimony. Trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution.

Agent Shute testified that [appellant's] cell phone was near the scene of the crime based on cellular tower analysis. While trial counsel employed this data to challenge the Commonwealth's theory of the case, [appellant] claims that his investigation of the underlying scientific reliability of the evidence was deficient, resulting in prejudice. In support, [appellant] cites a study by telecommunications expert Manfred Schenk, who concludes that a single cell phone tower can only isolate a person's location within a 418 square mile range, and that any more specific location drawn from the data is nothing more than mere conjecture. [Appellant] further contends that trial counsel failed to investigate Pisano's, Harville's, and Gray's phones to determine whether or not the evidence was corroborated. [Appellant] alleges that adequate investigation would have revealed that Harville's phone was not in contact with [appellant's] phone at the time of the incident, and failure to determine whether other phones were in the area prevented trial counsel from developing theories that unidentified third parties may have been responsible for the murder.

Trial counsel's cross[-]examination of Agent Shute was an effective attempt to cast doubt on the veracity of his findings. Trial counsel elicited that Agent Shute could not attribute [appellant] to any phone recovered in this matter, and that the records appeared to show that the two phones that called each other at the time of the shooting both belonged to Gray. [(Notes of testimony], 8/13/13 at 197-200.[)] Shute further acknowledged that he did not investigate Harville's or Pisano's phones, and in fact never heard Harville's

- 14 -

> name before trial. [(]*Id.* at 201-203.[)] This line of questioning is consistent with [appellant's] theory, as presented at trial, that Gray and Harville acted in concert, without [appellant's] involvement.
>
> [Appellant] fails to meet his burden with respect to the second prong of his argument. [Appellant] does not present any evidence from Pisano's, Harville's, or Gray's phones that contradict the evidence compiled by Agent Shute. To suggest that those phones may contain contrary evidence is mere conjecture.

PCRA court opinion, 3/30/17 at 11-13 (case citations omitted).

We have reviewed the record in its entirety and have considered the merit of appellant's arguments. Following our careful consideration of the record, including the briefs of the parties and the applicable law, we find that the PCRA court's conclusions are supported by competent evidence and are clearly free of legal error. Accordingly, we adopt the aforementioned analysis of the PCRA court as our own with respect to these ineffectiveness claims.

Appellant next argues that trial counsel was ineffective for failing to conduct an investigation of the rental vehicle that appellant's co-conspirators, Gray and Harville, drove on the day of Pisano's murder. (Appellant's brief at 24.) Appellant maintains that this vehicle may have contained "DNA, fingerprints, and other forensic material that could have exonerated [a]ppellant by demonstrating he was never inside the vehicle[,]" and that "[trial] counsel had no reasonable basis for failing to investigate this potentially exculpatory evidence." (*Id.*) We disagree.

As noted, in order to be entitled to relief under the PCRA, appellant must establish that the ineffective assistance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Spotz*, 84 A.3d at 311. Our supreme court has long recognized that "ineffectiveness of counsel claims may not be raised in a vacuum." *Commonwealth v. Morris*, 684 A.2d 1037, 1045 (Pa. 1996) (citations omitted), *cert. denied*, 521 U.S. 1106 (1997). "A determination of ineffectiveness cannot be based on conjecture concerning alleged physical evidence that[,]" as is the case here, "has never been admitted into evidence." *Id.* (emphasis added). In the instant matter, appellant's claim is wholly speculative and there is no basis for the PCRA court to deduce that trial counsel's purported oversight "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Spotz*, 84 A.3d at 311; *see also* 42 Pa.C.S.A. § 9543(a)(2)(ii). Accordingly, appellant's ineffectiveness claim must fail.

Appellant next argues that trial counsel was ineffective for failing to object to comments the prosecutor made during his closing argument that referenced the September 11, 2001 terrorist attacks. (Appellant's brief at 25.) Specifically, Assistant District Attorney Richard Sax ("ADA Sax") made the following brief comments during his closing statement which appellant now challenges on appeal:

> Sometimes beyond a reasonable doubt is like a jigsaw puzzle. So all these pieces you don't look at one piece.

> Let's say this was a jigsaw puzzle of like the Eiffel Tower or The World Trade Center with like two planes you know two big holes in it and one plane going in. But there was a piece missing from the lower floors here or from over here with the piece missing that showed one of bodies throwing themselves out of the building. Imagine somebody telling you that that's not The World Trade Center on the day of September 11th 2001 or that's not the Eiffel Tower because there's a piece over here. No.
>
> If every corner and house had video, yeah, there's [appellant]. What you saw and what you heard and what was corroborated beyond all doubt if you use your common sense.

Notes of testimony, 8/15/13, at 180-181.

Appellant argues that ADA Sax's comments were "innately prejudicial and constituted prosecutorial misconduct" given appellant's Muslim heritage and that trial counsel's failure to object on this basis entitles him to a new trial. (Appellant's brief at 27-28.) We disagree.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." **Commonwealth v. Harris**, 884 A.2d 920, 927 (Pa.Super. 2005), **appeal denied**, 928 A.2d 1289 (Pa. 2007) (citations omitted). Not every unwise remark on a prosecutor's part, however, constitutes reversible error. **Id.** "Prosecutorial misconduct occurs when the effect of the prosecutor's comments would be to prejudice the trier of fact, forming in its mind fixed bias and hostility toward the defendant so that it could not weigh the evidence objectively and render a true verdict."

***Commonwealth v. Duffy***, 832 A.2d 1132, 1137 (Pa.Super. 2003), ***appeal***

***denied***, 845 A.2d 816 (Pa. 2004).

> Counsel['s] remarks to the jury may contain fair
> deductions and legitimate inferences from the
> evidence presented during the testimony. The
> prosecutor may always argue to the jury that the
> evidence establishes the defendant's guilt, although a
> prosecutor may not offer his personal opinion as to
> the guilt of the accused either in argument or in
> testimony from the witness stand. Nor may he or she
> express a personal belief and opinion as to the truth
> or falsity of evidence of defendant's guilt, including
> the credibility of a witness.

***Commonwealth v. Chmiel***, 777 A.2d 459, 466 (Pa.Super. 2001), ***appeal***

***denied***, 788 A.2d 372 (Pa. 2001), ***cert. denied***, 535 U.S. 1059 (2002).

Following our careful review, we agree with the PCRA court that

ADA Sax's comments, when read as a whole, were not so prejudicial as to

warrant that a new trial be granted. "A petitioner establishes prejudice when

he demonstrates that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009) (citations and

internal quotation marks omitted). "[A] prosecutor is permitted fairly wide

latitude in advocating for the Commonwealth, including the right to argue all

fair conclusions from the evidence, to respond to defense arguments, and to

engage in a certain degree of oratorical flair." ***Harris***, 884 A.2d at 931. All

such comments must be reviewed in the context in which they were made.

***Commonwealth v. Robinson***, 877 A.2d 433, 441 (Pa. 2005).

Here, the record reflects that ADA Sax's reference to planes striking the World Trade Center, while arguably tactless, was not the type of comment that would cause the jury to form a fixed bias or hostility towards appellant and prevent it from rendering a fair and impartial verdict. Rather, we agree with the PCRA court that ADA Sax's comments were "a vivid, if imprecise, explanation of the nature of circumstantial evidence" and were a fair response to trial counsel's prior inference that appellant cannot be found guilty because he did not appear in any of the video surveillance footage of the incident. (**See** PCRA court opinion, 3/30/17 at 16, citing notes of testimony, 8/15/13 at 153.) Accordingly, appellant's trial counsel had no basis upon which to object and appellant's underlying ineffectiveness claim must fail. **See Commonwealth v. Rivera**, 816 A.2d 282, 292 (Pa.Super. 2003) (stating, "it is axiomatic that . . . counsel will not be considered ineffective for failing to pursue meritless claims."), **appeal denied**, 828 A.2d 350 (Pa. 2003).

Lastly, appellant contends, albeit parenthetically, that the PCRA court erred in dismissing his PCRA petition without conducting an evidentiary hearing on all the aforementioned issues raised in his PCRA petition. (Appellant's brief at 3, ¶ II.) We disagree.

This court has long recognized that there is no absolute right to an evidentiary hearing. **Commonwealth v. Hart**, 911 A.2d 939, 941 (Pa.Super. 2006) (citation omitted). "It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no

support either in the record or other evidence." ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa.Super. 2012) (citations omitted). When the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." ***Commonwealth v. Khalifah***, 852 A.2d 1238, 1240 (Pa.Super. 2004).

As discussed, there was no merit to appellant's underlying ineffectiveness claims. Accordingly, we discern no error on the part of the PCRA court in dismissing appellant's petition without conducting an evidentiary hearing.

For all the foregoing reasons, we affirm the March 30, 2017 order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/18

- 20 -