J-S35015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
                                 :

            v.                      :

EDWIN R. ANDERSON         :
                                 :
            Appellant        :    No. 544 EDA 2019

Appeal from the PCRA Order Entered January 15, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000334-2015

BEFORE:   OLSON, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:               **FILED AUGUST 16, 2019**

Appellant, Edwin R. Anderson, appeals from the order entered on January 15, 2019, which dismissed his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In 2015, Appellant was arrested and charged with persons not to possess firearms and firearms not to be carried without a license.[1] Prior to trial, Appellant filed a motion to suppress the physical evidence against him, on the ground that the police did not have reasonable suspicion to conduct a stop and frisk of his person. **See** Appellant's Motion to Suppress, 6/22/15, at 1-9. We previously summarized the evidence presented during the September 23, 2015 suppression hearing:

> In the early morning hours of January 22, 2015, Corporal
> Jonathan Shave of the Coatesville Police Department

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

---

*   Retired Senior Judge assigned to the Superior Court.

received a dispatch to the scene of a robbery. The suspects had fled, and the victim

> described them as being young black males in their teens or early twenties. The suspect that came in the house and took the wallet he described as light skinned, shorter and stocky. The other suspect he described as dark skinned and taller. . . .
>
> . . . [The victim] stated that one of the suspects implied that he had a gun and he did observe a dark handle in his pocket, but he could not tell if it was a gun or not. . . .

[N.T. Suppression Hearing, 9/23/15, at 13].

On January 23, 2015, at about 5:25 p.m., while off-duty, Cpl. Shave went to a Walgreens store located in a high crime area, approximately ten blocks away from where the robbery occurred. Cpl. Shave observed two men who generally matched the physical description of the robbery suspects walk into the store together, specifically, Mr. Ernay, a "[l]ight-skinned black male, small in stature," and Appellant, who "was darker skinned than his light-skinned male companion and he was taller." [*Id.* at 10 and 19]. Cpl. Shave

> observed that [Mr. Ernay] was carrying a firearm. The firearm was on his right side. [Cpl. Shave] observed the firearm, the slide and the barrel to be tucked into his jeans pocket with the handle of the firearm sticking out. The weapon was not holstered in any way, shape or form.

[*Id.* at 7].

Cpl. Shave, who has had extensive training in the area of firearm safety, had never seen anyone carry a firearm in this dangerous manner. [*See id.* at 7-8, 11, and 19]. This "stood out completely [to him]" and he thought: "[t]hese are the two guys from that robbery because of that firearm, the way it was positioned in his pocket." [*Id.* at 19].

Cpl. Shave exited the store and notified shift supervisor Cpl. Jeffrey Ingemie that "[he] had observed [two] subjects [who] appeared to have matched the description of a robbery,

specifically one with a firearm tucked in his pocket, and [he] asked [Cpl. Ingemie] to respond to assist." [**Id.** at 14, 27, 36, and 45]. Multiple officers responded to the Walgreens, including Cpls. Ingemie and Sean Dowds. . . .

Appellant remained in the store, and Mr. Ernay returned to his vehicle. Cpl. Ingemie investigated Mr. Ernay, and determined that he was legally carrying the firearm. While Cpl. Ingemie was investigating Mr. Ernay, he noticed that Appellant was pacing inside of the store near the cash registers and staring at the officers, without purchasing anything. Cpl. Ingemie directed Cpl. Dowds to speak to Appellant.

Cpl. Dowds entered the store accompanied by Police Officer Chris McCarthy, and they approached Appellant. Cpl. Dowds told Appellant that he would like to speak to him and requested identification. Appellant produced his license[] and Officer McCarthy returned to his patrol vehicle to run it. Cpl. Dowds asked Appellant to step outside of the store with him, Appellant assented, and the two men walked outside of the store towards the patrol vehicle. Cpl. Dowds asked Appellant if he could pat him down for safety[] and Appellant did not respond. Cpl. Dowds proceeded to pat Appellant down, checking for weapons, "for [his] safety," and because "in [his] training and experience, where there's one gun, there possibly could be two guns." [**Id.** at 43-46]. The pat down revealed a loaded handgun in Appellant's waistband. Cpl. Dowds detained Appellant, and police determined that he is a prior convicted felon, and is ineligible to have a license to carry a firearm.

**Commonwealth v. Anderson**, 161 A.3d 369 (Pa. Super. 2017) (unpublished memorandum) at 2-4 (footnote omitted).

The suppression court denied Appellant's motion to suppress and Appellant proceeded to a stipulated bench trial. At the conclusion of the trial, the trial court found Appellant guilty of the charged crimes and, on March 28, 2016, the trial court sentenced Appellant to serve an aggregate term of

three-and-a-half to eight years in prison, followed by three years of probation, for his convictions.

On direct appeal, this Court rejected Appellant's claims that the police illegally detained and frisked him and that the suppression court erred when it denied his motion to suppress. *See id.* at 1-9. We reasoned:

> Here, while at a drugstore located in a high crime area in close proximity to where a robbery had occurred the day before, Cpl. Shave observed two men who matched the general description of the robbery suspects enter the store together.
>
> Importantly, one of the men was carrying a firearm in the exact same dangerous and highly unusual manner as one of the robbery suspects. Because of his concern for safety, Cpl. Shave requested police assistance, and relayed to the other officers his observations. Upon police arrival at the drugstore, Appellant paced and stared at the officers, remaining in the store without purchasing anything, while police investigated his companion. Cpl. Dowds then engaged Appellant and conducted a pat-down search to determine whether he was carrying a weapon, "for [his] safety," and because "in his training and experience, where there's one gun, there possibly could be two guns."
>
> Based on the foregoing, in light of the totality of the circumstances, and giving weight to the inferences Cpl. Dowds drew based on his training and experience, we conclude that the investigatory detention was supported by reasonable suspicion of criminal activity, and Cpl. Dowds' justifiable belief in the need to protect officer safety. Thus, the trial court properly denied Appellant's motion to suppress evidence.

*Id.* at 8-9 (citations omitted).

On February 7, 2017, we affirmed Appellant's judgment of sentence. *Id.* at 1-9.

- 4 -

Appellant filed a timely, *pro se* PCRA petition and the PCRA court appointed counsel to represent Appellant during the proceedings. ***See***, ***e.g.***, Appellant's *Pro Se* PCRA Petition, 1/29/18, at 1-8. Counsel eventually filed an amended PCRA petition on Appellant's behalf. ***See*** Amended PCRA Petition, 7/16/18, at 1-8. Within the PCRA petition, Appellant claimed that his trial counsel provided ineffective assistance during the suppression hearing because counsel: failed to properly cross-examine Corporal Shave regarding the statement given by the robbery victim that "he could not tell whether [the dark handle he saw in the pocket of one of the perpetrators] was a gun or not;" failed to properly cross-examine Corporal Shave regarding the statement given by the robbery victim that "the same perpetrator also pulled a large knife out and stuck it to [the victim's] back;" and, failed to properly argue to the suppression court "that the robbery victim's statement did not support the Commonwealth's argument that the robbery victim 'reported that he believed the actor had a gun sticking out of his pocket.'" ***Id.*** at 4-5 and 7 (emphasis omitted). According to Appellant:

> It is clear that trial counsel's ineffectiveness in failing to properly cross-examine [Corporal] Shave and make the corresponding argument to the [suppression] court caused prejudice. The [robbery] victim had stated that he could not tell whether the handle was a firearm or not. The [suppression] court was unaware of the fact that the robbery victim who reported seeing a large handle had also reported seeing a large knife during the same encounter. Without the information regarding the large knife, the [suppression] court would certainly assume the handle was that of a gun and, therefore, credit this as a unique match between the two sets of individuals. Without the assumption that the handle was

that of a gun being carried in an unusual manner, the description of the two robbery suspects was insufficient to justify an investigatory detention of [Appellant] and Mr. Ernay.

*Id.* at 7.

Further, Appellant attached to his PCRA petition a portion of the January 22, 2015 police incident report, which documented the robbery. In relevant part, the police incident report declares:

> 01/22/2015          05:07 . . .
>
> On the above date and time, I, [Police Officer Kirt Guyer], was dispatched to [a particular house] in reference to a robbery. Upon arrival[,] I met with [J.M.] who stated that he went outside to warm up his vehicle. . . . He stated that he was approached by two [black males] dressed in all black and wearing masks. He stated that they demanded that he give [them] money. He stated that he had no money on him so he gave them the car keys. They stated to him, "fuck your car, we know you got money." He stated that he did not have his wallet on him and he told them that it was in the house. He wanted them to follow him in the house because he had guns in his house. He stated that one of the suspects implied that he had a gun and he did observe a dark handle in his pocket, but could not tell if it was a gun or not. The same suspect also pulled a large knife out and stuck it to [J.M.'s] back as he led him in his house. The other stood outside by the vehicle. . . .

Police Incident Report, dated 1/22/15, at 5 (attached as "Exhibit B" to Appellant's Amended PCRA Petition).

On December 7, 2018, the PCRA court provided Appellant with notice that it intended to dismiss his petition in 20 days, without holding a hearing. PCRA Court Order, 12/7/18, at 1-7; *see also* Pa.R.Crim.P. 907(1). Appellant

did not respond to the Rule 907 notice and, on January 15, 2019, the PCRA court finally dismissed Appellant's petition. PCRA Court Order, 1/15/19, at 1.

Appellant filed a timely notice of appeal. He numbers two claims in his statement of questions involved:

> 1. Did the PCRA court err in failing to find trial counsel ineffective for failing to properly cross-examine [Corporal] Jonathan Shave during the suppression hearing conducted on September 23, 2015?
>
> 2. Did the PCRA court err in failing to find trial counsel ineffective for failing to argue that the robbery victim's statement did not support the Commonwealth's argument during the suppression hearing?

Appellant's Brief at 4.

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017) (citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must [] prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Stewart*, 84 A.3d at 707.

Finally, a PCRA petitioner is not automatically entitled to an evidentiary hearing on his petition. A PCRA petition may be dismissed without a hearing if the PCRA court "is satisfied from [its review of the petition] that there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1). However, when the PCRA petition raises material issues of fact, the PCRA court "shall order a hearing." Pa.R.Crim.P. 908(A)(2). Thus, "[t]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011) (quotations and citations omitted).

- 9 -

First, Appellant claims that he is entitled to relief on his claims that, during the suppression hearing, his trial counsel was ineffective for failing to "properly cross-examine Corporal Shave" regarding the fact that the robbery victim told the police: "he could not tell whether [the dark handle he saw in the pocket of one of the perpetrators] was a gun or not" and "the same perpetrator also pulled a large knife out and stuck it to [the victim's] back." Appellant's Brief at 15. These claims fail.

Appellant's first sub-claim contends that his trial counsel was ineffective for failing to properly cross-examine Corporal Shave "regarding the fact that the robbery victim told police 'he could not tell whether [the dark handle he saw in the pocket of one of the perpetrators] was a gun or not.'" *Id.* This claim fails because, during the suppression hearing, Corporal Shave specifically testified as to this point. To be sure, during Corporal Shave's direct testimony, the corporal read from the police incident report, which documented the earlier robbery. Corporal Shave testified:

> On page five . . . [of the police incident report,] there is a main narrative that was written by Officer Kirt Guyer. . . . [T]he report states: [the robbery victim] stated that **one of the suspects implied that he had a gun and he did observe a dark handle in his pocket, but he could not tell if it was a gun or not**.

N.T. Suppression Hearing, 9/23/15, at 12-13 (emphasis added).

Therefore, the suppression court was well aware of the fact that the robbery victim "could not tell whether [the dark handle he saw in the pocket of one of the perpetrators] was a gun or not." *See* Appellant's Brief at 15.

- 10 -

Appellant's claim that trial counsel was ineffective for failing to have Corporal Shave reiterate this fact during cross-examination fails, as Appellant did not suffer prejudice from this alleged failing.

Appellant also claims that his trial counsel was ineffective for failing to cross-examine Corporal Shave regarding the fact that the robbery victim told the police "the same perpetrator also pulled a large knife out and stuck it to his back." Appellant's Brief at 15. Appellant contends that this failure was prejudicial because the suppression court was never made aware that "the large handle upon which [Corporal] Shave placed so much weight with regard to the identification could have corresponded to the large knife which was brandished." *Id.* at 16. Further, Appellant argues, if the suppression court knew that the robbery suspect possessed a large knife, the suppression court would have concluded that the police did not have reasonable suspicion to stop and frisk Appellant or his companion. *See id.* at 15-19.

Contrary to Appellant's argument on appeal, the fact that the perpetrator "pulled a large knife out and stuck it to [the robbery victim's] back" does not prove that the "dark handle in [the perpetrator's] pocket" was the handle of a knife. Further, and more importantly, the fact that the perpetrator "pulled a large knife out and stuck it to [the robbery victim's] back" would not subtract from Corporal Shave's reasonable suspicion that Appellant and Mr. Ernay matched the description of the robbery suspects, in part, because the corporal saw that Mr. Ernay had a firearm haphazardly tucked into his pants pocket.

Certainly, the robbery victim attested to the police that: "one of the suspects implied that he had a gun and [the victim] did observe a dark handle in [the suspect's] pocket, but could not tell if it was a gun or not. The same suspect also pulled a large knife out and stuck it to [the victim's] back as he led him in his house." Police Incident Report, dated 1/22/15, at 5. Therefore, although the robbery victim told the police that the perpetrator "pulled a large knife out," the victim did not identify the "dark handle" as belonging to the "large knife." Rather, as to the "dark handle," the robbery victim only stated: "one of the suspects implied that he had a gun and [the robbery victim] did observe a dark handle in [the suspect's] pocket, but could not tell if it was a gun or not." ***Id.***

Given the robbery victim's statement that "one of the suspects implied that he had a gun and [the victim] did observe a dark handle in [the suspect's] pocket," Corporal Shave was entitled to believe that the "dark handle" in the perpetrator's pocket was possibly a gun. Corporal Shave thus acted reasonably when he suspected that Appellant and Mr. Ernay matched the description of the robbery suspects, partially because the corporal saw that Mr. Ernay had a firearm tucked into his pants pocket. We thus conclude that, even if the suppression court were made aware of the fact that the robbery suspect "pulled a large knife out and stuck it to [the robbery victim's] back," the suppression court would have still concluded that the police had reasonable suspicion to stop and frisk Appellant. Therefore, since "there is [no] reasonable probability that, but for [trial] counsel's [alleged] error[], the

- 12 -

result of the proceeding would have been different," Appellant's claim on appeal must fail. **See Stewart**, 84 A.3d at 707 (quotations and citations omitted).

Finally, Appellant claims that the PCRA court erred when it "fail[ed] to find trial counsel ineffective for failing to argue that the robbery victim's statement did not support the Commonwealth's argument during the suppression hearing." Appellant's Brief at 4. The PCRA court ably explained why this claim fails:

> [Appellant] argues that trial counsel was ineffective for failing to argue that the robbery victim's statement did not support the Commonwealth's argument [during the suppression hearing] that the robbery victim "reported that he believed the actor had a gun sticking out of his pocket." Specifically, [Appellant] contends that trial counsel was ineffective for failing to argue that the victim never testified that the suspect had a gun sticking out of his pocket and these facts do not support the Commonwealth's argument.
>
> During closing arguments in the suppression hearing, the Commonwealth argued "it's not just about the skin color or the height issue, but the key is the gun sticking out of the pocket in that manner." The Commonwealth's arguments are not binding on the fact finder, are not part of the evidence, and are not required to be accepted by the fact finder. The prosecutor, as well as defense counsel, must have reasonable latitude to present their case with logical force and vigor. The Commonwealth's remarks to the [suppression] court may contain fair deductions and reasonable inferences from the evidence presented; however, personal opinions may not be offered.
>
>> [C]omments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a

- 13 -

true verdict." Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred.

[**Commonwealth v. Chmiel**, 777 A.2d 459, 466 (Pa. Super. 2001) (citations and paragraphing and some quotations omitted); **see also Commonwealth v. Irwin**, 579 A.2d 955, 957 (Pa. Super. 1990) ("[i]t has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict")].

[Appellant] has failed to establish how the Commonwealth's remarks prejudiced him. The [suppression] court's decision to deny the suppression [motion was] based upon more than this one argument. The [suppression] court was aware that the victim of the robbery did not specifically state that the perpetrator was carrying a firearm. . . . Therefore, [Appellant] has failed to provide evidence that trial counsel's argument would have altered the outcome of the proceedings.

PCRA Court Order, 12/7/18, at n.1 (some citations and capitalization omitted).

We agree and conclude that Appellant's final claim on appeal thus fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/19

- 14 -