**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**David CHMIEL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 2000.
Filed Feb. 5, 2001.
Reargument Denied April 20, 2001.

Paul P. Ackourey and Gerard E. Grealish, Scranton, for appellant.

Ronald T. Williamson, Asst. Dist. Atty., Norristown, for Commonwealth, appellee.

Before POPOVICH, EAKIN and BECK, JJ.

POPOVICH, J.:

■ ¶ 1 David Chmiel appeals from the May 22, 2000, order of the Court of Common Pleas of Lackawanna County, which denied his motion to dismiss on double jeopardy grounds. We affirm.[1]

¶ 2 Chmiel was charged with stabbing to death three elderly siblings, Angelina, Victor, and James Lunario, while robbing their home in Throop, Lackawanna County, in the early morning hours of September 21, 1983. After a jury trial in 1984, Appellant was convicted of three counts of murder in the first degree, three counts of robbery, one count of burglary and two counts of theft by unlawful taking. The jury at the sentencing hearing determined that Appellant should be sentenced to death. Post-trial motions were filed. Chmiel then filed a *pro se* Post Conviction Hearing Act petition alleging ineffective assistance of counsel. The trial court appointed new counsel and stayed the post-trial motions. Following an evidentiary hearing, the trial court dismissed the PCHA petition. Post-trial motions were then argued and denied. Subsequently, the trial court formally sentenced Chmiel to death for each of the murder convictions. Direct appeal from the judgment of sentence was taken to our Supreme Court where the Court reversed the convictions after finding that trial counsel had been ineffective and remanded for a new trial. *See Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9 (1994).

¶ 3 Chmiel was retried on the same charges in 1995. As before, he was convicted of three counts of murder in the first degree and sentenced to death. Chmiel filed a direct appeal from that judgment of sentence to our Supreme Court. Chmiel raised several issues on appeal, including several issues in this appeal. The Supreme Court addressed one issue; specifically, did the trial court err in

---

1. In examining this issue, our scope of review is plenary, as it is with any review of questions of law. *See Commonwealth v. Hockenbury*, 549 Pa. 527, 531 n. 3, 701 A.2d 1334, 1336 n. 3 (1997) (citing *Commonwealth v. Morley*, 545 Pa. 420, 424 n. 2, 681 A.2d 1254, 1256 n. 2 (1996)).

allowing the Commonwealth to introduce into the record of Chmiel's second trial portions of his prior trial counsel's testimony given at the ineffectiveness hearing? The Court concluded that the admission of such testimony, although admitted properly based upon Pennsylvania's law of evidence, was error because it violated Chmiel's Sixth Amendment right to assistance of counsel for his defense and his Fifth Amendment right to be free from compelled self-incrimination. Subsequently, the Court reversed Chmiel's convictions and remanded the case for a third trial. *See Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406 (1999).

¶ 4 Before Chmiel was retried for the third time, he filed a motion to dismiss the prosecution on double jeopardy because of prosecutorial misconduct, which he asserts was intended to deny a fair second trial. Following oral argument on May 15, 2000, the trial court denied Chmiel's motion on May 22, 2000. Chmiel now appeals from the interlocutory order denying his motion to dismiss.

¶ 5 On appeal, Chmiel asserts that the trial court erred when it denied his motion to dismiss the prosecution on double jeopardy grounds based on prosecutorial misconduct during his second trial. Specifically, Chmiel alleges that such prosecutorial misconduct included the following:

1. Repeated insinuation in both the prosecutor's questioning and closing argument that one of the victims was sexually assaulted when there was neither such a charge nor forensic evidence to support such a charge, even when such conduct was in violation of the trial court's rulings.

2. Vouched for the credibility of the Commonwealth's principal witness to the extent that the prosecutor proclaimed that the witness spoke "God's own truth."

3. Made other inflammatory religious invocations.

4. Voiced personal belief that Chmiel was guilty of murder in the first degree during his closing argument.

5. Made impromptu speeches repeatedly during trial.

6. Spoke too loudly at sidebar.

7. Referenced Chmiel's first trial and allowed Commonwealth witnesses to do the same when such references had been barred by the trial court's ruling.

8. Referred to Chmiel's failure to take the stand at Chmiel's first trial during his cross-examination of Chmiel.

9. Preyed upon the jurors' sympathies for the victims.

10. Violated the conflict of interest that the State Attorney General's Office had with the District Attorney's Office.

11. Utilized leading questions repeatedly and *ad nauseum* during his direct examination.

12. Did other acts of prosecutorial misconduct.

Appellant's Brief, at 4.

■ ¶ 6 Under both the federal and state constitutions, double jeopardy bars retrial where the prosecutor's misconduct was intended to provoke the defendant into moving for a mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987). In *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), our Supreme Court recognized that the standard set forth in *Oregon v. Kennedy, supra*, was inadequate to pro-

tect a defendant's rights under the Pennsylvania Constitution. The Court stated:

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Smith*, at 186, 615 A.2d at 325 (quoted in *Commonwealth v. Martorano*, 559 Pa. 533, 537–38, 741 A.2d 1221, 1223 (1999), *rearg. denied* 1999 Pa.LEXIS 3828 (Pa.12/27/99)).

 ¶ 7 Prosecutorial misconduct includes actions intentionally designed to provoke the defendant into moving for a mistrial or conduct by the prosecution intentionally undertaken to prejudice the defendant to the point where he has been denied a fair trial. *Smith*, at 186, 615 A.2d at 325. The double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant subjected to the kind of prosecutorial misconduct intended to subvert a defendant's constitutional rights. *Id.* at 186, 615 A.2d at 325. However, *Smith* did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. *See Commonwealth v. Simone*, 712 A.2d 770 (Pa.Super.1998), *appeal denied*, 557 Pa. 628, 732 A.2d 614 (1998). "Rather, the *Smith* Court primarily was concerned with prosecution tactics, which actually were designed to demean or subvert the truth seeking process." *Id.* at 774–75. The *Smith* standard precludes retrial where the prosecutor's conduct evidences intent to so prejudice the defendant as to deny him a fair trial. A fair trial, of course is not a perfect trial. Errors can and do occur. That is why our judicial system provides for appellate review to rectify such errors. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied. *See Commonwealth v. Martorano & Daidone*, 453 Pa.Super. 550, 684 A.2d 179, 184 (1996), *affirmed Martorano*, 559 Pa. 533, 741 A.2d 1221 (1999). "A fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and] [w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity." *Martorano*, 559 Pa. at 539, 741 A.2d at 1223 (*quoting Martorano & Daidone*, 684 A.2d at 184). We must first determine if Chmiel's claims of prosecutorial misconduct are meritorious, and then, we must determine if such claims bar retrial on double jeopardy grounds.

 ¶ 8 Our standard for a claim of prosecutorial misconduct is as follows:

> The primary guide in assessing a claim of error of this nature is to determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974); *Commonwealth v. VanCliff*, 483 Pa. 576, 397 A.2d 1173 (1979). In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, Code of Professional Responsibility, Canon 7, E.D. 7–19–7–39, and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975).

*Commonwealth v. Rainey*, 540 Pa. 220, 235, 656 A.2d 1326, 1334 (1995) (*quoting Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991)).

¶ 9 Chmiel first contends that the prosecutor committed misconduct when he insinuated repeatedly that one of the victims was sexually assaulted. Specifically, Chmiel contends that even though he was not charged with sexual assault and there was no forensic evidence to support such a charge, the prosecutor committed misconduct when he insinuated during questioning of witnesses and closing argument that such an assault occurred.

¶ 10 During the Commonwealth's case-in-chief, the prosecutor elicited testimony from several witnesses[2] that blood spots were found on Angelina's legs from her knees to her upper thighs and groin area, that her dress was pulled up past her knees and her legs were spread apart and that she was not wearing any underwear when found. Defense counsel objected repeatedly to this line of questioning, but the trial court overruled those objections. The prosecutor then asked former State Trooper Francis Zanin, who was the officer who had performed the rape kit test on Angelina, "If someone had inserted his penis into the vagina of this woman but not ejaculated—." N.T., 2/16/95, at 276. Defense counsel objected before the prosecutor could complete this question. A sidebar followed.

¶ 11 At sidebar, the trial court asked if any sexual assault charges of any type relating to Angelina were pending against Chmiel. Counsel informed the trial court that there were none. Defense counsel moved for a mistrial on the grounds that no sexual assault charges were filed and there was no evidence to support such charges. The trial court sustained defense counsel's objection to the question but denied the motion for a mistrial. The trial court then instructed the prosecutor to

cease with this line of questioning and issued a cautionary instruction to the jury.

¶ 12 We find that although any inference of sexual assault from the prosecutor's questioning was improper in this case, not all of the questions were improper. The position of the body and the dress, the blood spots on the legs and the lack of underwear on the victim may be proper testimony from witnesses in that such testimony established the condition of the body. However, the prosecutor committed error when he insinuated Chmiel, in some manner, sexually assaulted Angelina. The prosecutor summarized this insinuation in his closing:

> Then [Chmiel] goes down [to the first floor], for some reason *he gets interested in Angelina,* and we have the blood smears on her. He told his brother he was looking under the pillow. *Whatever he was doing, he was doing.* But he did that, and then he decides he's got to go back up [stairs].

N.T., 3/2/95, at 171–72 (emphasis added).

¶ 13 We find that the prosecutor's insinuation that Chmiel sexual assaulted Angelina constituted prosecutorial misconduct because Chmiel was not charged with such crime and any reference to it would cause undue prejudice on Chmiel in that he must now defend against a crime for which he was not charged.

¶ 14 Now, we must determine if these findings of prosecutorial misconduct warrant a double jeopardy discharge. Chmiel argues that the prosecutor's insinuation of a sexual assault is similar to the prosecutor's remarks in *Martorano,* in which our Supreme Court found that the conduct was so egregious as to bar retrial. In that case, the prosecutor's conduct, described

---

**2.** Specifically, this testimony was elicited from former Pennsylvania State Trooper John Fox, who participated in the Lunario murder investigation, Mary Drake, the visiting practical nurse who first discovered the bodies and Dennis Savitski, an ambulance medic.

as Machiavellian, included blatantly disregarding the trial court's evidentiary rulings, disparaging the integrity of the trial court in front of the jury, and repeatedly alluding to evidence that the prosecutor knew did not exist. *See Martorano*, 559 Pa. at 538, 741 A.2d at 1223. However, the prosecutor's misconduct in this case is distinguishable from that in *Martorano* because the prosecutor did not undermine the integrity of the trial court. After reviewing the record, we find Chmiel failed to establish the higher standard of intentional prosecutorial misconduct designed to deprive Chmiel of a fair trial or to subvert the truth-determining process in order for the double jeopardy clause to be implicated and retrial barred. *See Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96 (1996). Therefore, the proper remedy in this situation is not a bar to prosecution but is a retrial, which our Supreme Court awarded previously to Chmiel. *See Chmiel*, 558 Pa. 478, 738 A.2d 406 (1999).

▮▮▮ ¶ 15 Chmiel's second, third and fourth contentions are that the prosecutor committed misconduct when he made religious invocations and when he expressed his personal belief as to the veracity of a witness and as to Chmiel's guilt.

It is well established that a prosecutor, just as a defense attorney, must have reasonable latitude in presenting a case to the jury and must be free to present his or her argument with logical force and vigor. Counsels' remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony. The prosecutor may always argue to the jury that the evidence establishes the defendant's guilt, although a prosecutor may not offer his personal opinion as to the

guilt of the accused either in argument or in testimony from the witness stand. Nor may he or she express a personal belief and opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness.

However, not every intemperate or uncalled for remark by the prosecutor requires a new trial. As we have stated many times:

> [C]omments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict."

Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred.

*Commonwealth v. D'Amato*, 514 Pa. 471, 489, 526 A.2d 300, 309 (1987) (citations omitted).

¶ 16 Additionally, our Supreme Court has narrowly tolerated references to the Bible and other religious invocations and has characterized such references as "oratorical flair." *See Commonwealth v. Chambers*, 528 Pa. 558, 584, 599 A.2d 630, 643. Our Supreme Court has cautioned that such references are a dangerous practice that is strongly discouraged.[3] *See id.*

¶ 17 Here, the prosecutor argued in closing,

> And we're privileged to see it because it was a moment of *God's own truth* shining in this Courtroom brighter than the sun. If you couldn't see that as against the coldness of this Defendant, calculating, a little smile, the suit with the white

---

**3.** Our Supreme Court in *Chambers* held that "reliance in any manner upon the Bible or any other religious writing in support of the imposition of a penalty of death is reversible error *per se.*" *See Chambers,* 528 Pa. at 586, 599 A.2d at 644.

tie. He didn't have a suit with a white tie then. He had a full beard. But here he comes dressed like an angel. Marty dressed in casual clothes as he always dresses. He wasn't trying to impress anybody. The only thing he had to impress you with, or as Buffton said, the only weapon he had was the truth, and the truth was his only sword. And he spoke it through great pain, but it was God's own truth.

N.T., 3/2/95, at 141–42 (emphasis added).

¶ 18 The prosecutor continued later,

You know they say *Heaven rejoices more at one repentant sinner that for all the good deeds of the righteous.* Here we have a man, Martin Chmiel, who saw the light, who came out, turned from the dark, followed his conscience, a spark of goodness in him, and did something in this courtroom that was kind of a miracle. And I went out in that hall, I almost cried. He touched me. Something special happened in this courtroom. You could feel it to the core of your being. The decency of a human being. *A sinner, yes, a sinner, but a sinner who had repented, and Heaven was rejoicing,* and he touched the heart. But to his family he is a rat, a rat because he told the truth. *God's own truth.*

N.T., 3/2/95, at 184 (emphasis added).

¶ 19 We note our Supreme Court's displeasure of invoking religious references into a judicial proceeding. The Commonwealth argues that these statements were merely oratorical flair. We disagree. By arguing that Martin speaks "God's truth,"

the prosecutor interjected religious law for the jury's consideration. The prosecutor elevated Martin's testimony to that of God. The prosecutor's misconduct regarding the religious invocation was compounded when he interjected his own personal belief in that Martin was telling the truth. The prosecutor eluded to the jury that because of Martin's testimony, he almost cried because Martin was speaking "God's truth." We find that the prosecutor committed misconduct by injecting a court proceeding with religious law and by asserting his personal belief as to the credibility of a witness. However, we do not find that this misconduct was intentionally done to prevent a fair trial. The proper remedy in this case would be a new trial, which Chmiel has already been awarded. *See Chmiel,* 558 Pa. 478, 738 A.2d 406 (1999).[4]

¶ 20 Chmiel's remaining contentions of prosecutorial misconduct do not rise to the level of prosecutorial misconduct. We will address each briefly.[5]

¶ 21 Chmiel's fifth contention of prosecutorial misconduct is when the prosecutor made impromptu speeches during trial, which amounted to the prosecutor testifying himself. Specifically, Chmiel argues that the prosecutor commented on evidence without noting an objection. We have reviewed the record and find that the prosecutor's comments did not prejudice Chmiel. Additionally, we note that defense counsel objected to comments that the prosecutor made that were not supported by the record, and the trial court gave a curative instruction to the jury. *Cf. Commonwealth v. Miller,* 541 Pa. 531, 550,

---

4. Chmiel listed several other examples of prosecutorial misconduct involving personal opinions of the prosecutor. However, we do not believe that those examples are analogous to the highly prejudicial prosecutorial statements made in *Chambers* and do not warrant a finding of misconduct.

5. We note that Chmiel did not develop each of the remaining contentions as separate legal arguments, but instead compiled and addressed them *en masse.*

664 A.2d 1310, 1319 n. 15 (Pa.1995) (juries are presumed to follow instructions of trial court to disregard inadmissible evidence), *cert. denied,* 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996).

¶ 22 Chmiel's sixth contention is that the prosecutor committed misconduct when he spoke too loudly during sidebar. Chmiel references five occasions during the guilt phase portion of the trial that the prosecutor spoke too loudly during sidebar. *See* N.T., 2/20/95, at 149; N.T., 2/23/95, at 78; N.T., 2/25/95, at 107–08; N.T. 2/27/95, at 105; N.T. 3/2/95, at 78. At four of the five occurrences, the trial court, twice without prompting from the defense attorney, asked the prosecutor to lower his voice. On the other occurrence, the defense attorney only asked the prosecutor to lower his voice. On all occasions, the prosecutor complied. Before the start of the trial proceedings on February 27, 1995, the defense attorney asked the trial court to question the jury as to whether any juror had heard the discussions at sidebar. The trial court obliged, and none of the jurors responded that they had heard the attorneys at sidebar. Therefore, the jury heard none of the first three occurrences. Additionally, Chmiel failed to allege that jury heard the prosecutor at sidebar during the last two occurrences. With this in mind, we cannot find that the prosecutor committed misconduct by speaking too loudly at sidebar if there was no evidence that the jury heard the prosecutor and thus prejudiced Chmiel.

¶ 23 Chmiel's seventh and eighth contentions are that the prosecutor committed misconduct when he referenced Chmiel's first trial, allowed Commonwealth witnesses to do the same and referred to Chmiel's failure to take the stand at the first trial.

¶ 24 Prior to trial, the trial court and counsel agreed that references to Chmiel's first trial be referred to as "prior proceeding." Chmiel argues that the prosecutor and several witnesses violated this order. However, most of the comments made referenced the prior trial as "the last time," without referencing the fact that there was a previous trial. Thomas Buffton and the prosecutor mentioned specifically the first "trial." *See,* 2/21/95, at 99, 281; 2/22/95, at 222, 2/24/95, at 215. On February 24, 1995, defense counsel moved for a mistrial because of the references to a previous trial. *See id.,* at 219. However, the trial court noted that defense counsel himself had used the term a few times and denied the motion. Even Chmiel mentioned the first "trial" during his testimony. *See* N.T., 2/28/95, 39. We find that such references were inadvertent and did not constitute prosecutorial misconduct.

¶ 25 Chmiel's ninth contention of prosecutorial misconduct is that the prosecutor preyed upon the jurors' sympathies for the victims. We have reviewed the record and find that the prosecutor's comments were not inappropriate and this contention is meritless.

¶ 26 Chmiel's tenth contention is that the prosecutor committed misconduct when he violated the conflict of interest with the District Attorney's Office.[6] Specifically, Chmiel contends that the State Attorney General's Office, who prosecuted him during the second trial, violated a conflict of interest with the Lackawanna County District Attorney's Office by set-

---

**6.** The Lackawanna County District Attorney's Office was unable to prosecute Chmiel during the second trial because Chmiel's appellate counsel gained employment in the District Attorney's Office. For this reason, the State Attorney General's Office prosecuted Chmiel during the second trial.

ting up an office within the District Attorney's Office and utilizing county personnel.

¶ 27 The trial court noted a conflict of interest existed only as to former Assistant District Attorney William Houser, who served as Chmiel's appellate counsel following his first conviction 1984. Chmiel has failed to provide any evidence suggesting that Mr. Houser participated in the prosecution by the Attorney General's Office. Mr. Houser left the District Attorney's Office on February 12, 1995, which was immediately prior to the commencement of the second trial. We find that the prosecutor did not commit misconduct by violating a conflict of interest with the District Attorney's Office.

¶ 28 Chmiel's eleventh contention is that the prosecutor committed misconduct by using leading questions during his direct examination. It is up to the trial court to decide to what extent it will tolerate leading questions on direct examination, and the defendant is not entitled to reversal except where the trial court has clearly abused its discretion. *See Commonwealth v. Gockley*, 411 Pa. 437, 455, 192 A.2d 693, 702 (1963). After review of the record, we find that the trial court did not abuse its discretion by tolerating leading questions, and we note that defense counsel asked leading questions during its case-in-chief.

¶ 29 Chmiel's final contention is that the prosecutor committed other acts of misconduct. However, Chmiel does not address these "other acts" in his brief. Therefore, we will not address his final contention.

¶ 30 In conclusion, we find that the prosecutor did commit misconduct when he insinuated that Chmiel had sexual assaulted Angelina, when he made religious references and when he gave personal opinions. However, we find that this misconduct was not intentionally designed to deprive Chmiel of a fair trial. Therefore, the double jeopardy clause is not implicated and retrial is not barred.

¶ 31 Order affirmed.