J-S36036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THOMAS MICHAEL LISOWSKI | : | |
| | : | |
| Appellant | : | No. 1404 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 13, 2023
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000038-2023

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED NOVEMBER 07, 2024**

Appellant, Thomas Michael Lisowski, appeals from the judgment of sentence of 12 to 24 months' incarceration, imposed after a jury convicted him of obstructing administration of law (hereinafter, "obstruction"), 18 Pa.C.S. § 5101. Herein, Appellant alleges that the trial court erred by failing to grant a mistrial, that the evidence was insufficient to support his conviction, and that the Commonwealth committed prosecutorial misconduct so egregious as to bar a retrial. After careful review, we affirm.

The trial court summarized the facts and procedural history of this case, as follows:

> [Appellant] was charged with one count of [obstruction]…, a misdemeanor of the second degree, from an incident that occurred on April 18, 2020[,] in Tunkhannock Township, Wyoming County, Pennsylvania. More specifically, the [c]riminal [i]nformation states that [Appellant] "intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or

obstacle, breach of official duty, or any other unlawful act, to wit, … [Appellant] continually refused to follow commands to turn around and face his vehicle and to keep his hands out of his pockets after being told to do so by [Patrolman] Benjamin Seibert[,] requiring him to take … [Appellant] to the ground and handcuff him." On July 18, 2023[,] a jury trial was held on this charge where [Appellant] was *pro se* with [c]ourt-appointed standby counsel seated with him.

Patrolman Benjamin Seibert (hereinafter "Patrolman Seibert") is a police officer with the Tunkhannock Township Police Department and he testified that on April 18, 2020[,] at about 7:00 p.m.[,] he was dispatched to a residence located at 8 Fir Road for a domestic incident where a gun had been fired … inside … the residence. Patrolman Seibert presented to the residence in a marked police car in full uniform with Patrolman Stephen Williams (hereinafter "Patrolman Williams"). At the residence, the [o]fficers were met by Deborah VanVleck[,] who indicated the she and her husband, Shawn VanVleck, had been arguing and that her husband was drinking and that he fired a shotgun from the basement into the first floor of the residence. The [o]fficers observed a hole in the ceiling and in one of the first-floor bedrooms. Deborah VanVleck informed the [o]fficers that her husband left the residence in a black Jeep Commander, intoxicated[,] with the shot[]gun and without a valid driver's license.

With this information, Patrolmen Seibert and Williams began to patrol the area looking for the Jeep Commander with tinted windows. Sometime thereafter, Patrolman Seibert spotted the vehicle on State Route 92 and pulled out to follow it in his marked police car. Upon pulling behind the Jeep Commander, Patrolman Seibert began recording from his dashcam.

Patrolman Seibert did not stop the Jeep immediately as he was waiting for the assistance of Patrolman Williams. Patrolman Seibert eventually activated his lights so that the Jeep would pull over and he could continue his investigation of what had occurred at the VanVleck residence. The Jeep pulled over in front of a mobile home, which Patrolman Seibert later learned was where [Appellant] was staying. [Appellant] testified that he was aware of the situation at the VanVleck residence prior to being pulled over and he was aware that Shawn VanVleck had been drinking and had the shotgun in the Jeep.

- 2 -

When Patrolman Seibert approached the vehicle, it was [Appellant] who [was] driving the vehicle with a passenger inside the vehicle. When he was asked for his identification[, Appellant] refused to provide it and [Appellant] told Patrolman Seibert to "get the fuck off of his property." Patrolman Williams testified that [Appellant] was very combative and he refused to step back from the [p]atrolman.

After numerous requests by Patrolman Seibert, [Appellant] eventually gave the [p]atrolman his license. Patrolman Seibert was concerned[,] given that there were two (2) males in the vehicle with a shotgun and tinted windows so he could not see inside the back of the vehicle and Patrolman Williams had not yet arrived on the scene. [Appellant] got out of his vehicle and at this point Patrolman Williams arrived on the scene as well as [Appellant's] mother. [Appellant] proceeded to yell at the officers telling him that he would not listen to them[,] nor answer any of their questions. [Appellant] refused to follow the [p]atrolmen's request to step away from the vehicle. [Appellant] repeatedly told the [p]atrolmen to get "the fuck of off his property" and that he would not make this [encounter] easy for them. Patrolman Williams struck [Appellant] in the head to confuse [Appellant] and help take him down to get him into custody.

Shawn VanVleck exited the vehicle and was placed in handcuffs so the [p]atrolmen could deal with [Appellant] because he was behaving so irately. [Appellant] was directed to take his hands out of his pockets so that the [p]atrolmen could handcuff him until they conducted their investigation and located the shotgun in the vehicle. After the [p]atrolmen got [Appellant] and Shawn VanVleck in handcuffs, they were able to locate the shotgun in the Jeep.

Prior to closing arguments, [Appellant] made an oral motion to dismiss[,] arguing that because he had no knowledge of the investigation surrounding the stop, he could not be charged with [o]bstructing [a]dministration of [l]aw. That [m]otion was denied following argument by the Commonwealth.

Following a jury trial, [Appellant] was found guilty of [obstruction]…. [Appellant] filed a [p]ost-[t]rial [m]otion[,] which was denied by this [c]ourt's [o]rder dated August 1, 2023. [Appellant] was sentenced on September 13, 2023[,] to a period of[] twelve (12) to twenty-four (24) months in a [s]tate [i]nstitution.

Trial Court Opinion (TCO), 1/25/24, at 1-4 (unpaginated; citations to the record omitted).

Appellant filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925. Herein, Appellant raises three issues for our review, which we have reordered for ease of disposition:

I. Whether the court erred when it failed to grant a mistrial after [Appellant], representing himself *pro se*, was denied a fair trial when he was handcuffed and removed from the courtroom for making a lawful, necessary[,] and appropriate objection.

II. Whether the prosecutor engaged in prosecutorial misconduct and [Appellant] should be barred from retrial.

III. Whether the Commonwealth lacked a *prima facie* case to assert a charge of obstruction…, a violation of 18 Pa.C.S.[] [§] 5101.

Appellant's Brief at 5 (unnecessary capitalization and emphasis omitted).

First, Appellant argues that the trial court erred by failing to grant his motion for a mistrial after he was allegedly "handcuffed and removed from the courtroom for making a lawful, necessary[,] and appropriate objection." *Id.* at 14 (emphasis and capitalization omitted). Appellant, who represented himself at trial, claims that he correctly raised a *pro se* objection during closing arguments when the prosecutor said that "if you resist arrest, that act, those acts are, in this context, the same as [obstruction]…[.]" *Id.* (quoting N.T. Trial, 7/18/23, at 254). Appellant claims that this was a misstatement of the law, yet when he appropriately objected, the court had him "removed from the courtroom." *Id.* at 15. He argues that "[t]his removal was prejudicial" because "he lost the ability to place further objections on the record and the

- 4 -

prosecutor was allowed to finish his argument out of the ear shot of [Appellant]." *Id.* Thus, Appellant insists that he was effectively "denied representation during the time he was removed from the courtroom[,]" which "denied him due process under the United States and Pennsylvania Constitutions." *Id.* at 15-16. Accordingly, he concludes that a mistrial was warranted.

Initially,

[w]ith regard to the denial of mistrials, the following standards govern our review:

In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-78 (Pa. Super. 2012) (citation omitted). Additionally, "[t]he remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Id.* at 878 (internal quotation marks and citation omitted).

Assessing the record before us, we conclude that the court did not abuse its discretion in denying Appellant's motion for a mistrial. First, Appellant fails to provide this Court with the full context of his removal from the courtroom. However, the Commonwealth aptly explains those circumstances, as follows:

> In his closing argument, [Appellant] stated, in relevant part:
>
>> So, they were trying to get me for a DUI, and they figure, oh, I got him for a DUI. I'll get him for resisting arrest, too, and that would scuff him up.
>>
>> ***
>>
>> So, if I was - - if I'm guilty of obstructing administration of law, since you couldn't get me for a DUI and get me for resisting arrest - - because that's what it was. If I - - if I was a - - so, they thought I was under a DUI, so they said, we're just going to give him - - we already got him for DUI, so let's just rough him up a little bit, and then we'll get him for resisting arrest, also. And then when I knew - - I knew I wasn't under DUI. That's why I was so, you know, belligerent with my words, standing up, trying to stand up for myself. If I did it wrong, then I did it wrong, but I still was trying to do it the right way.
>>
>> ***
>>
>> So, you couldn't get me for resisting arrest, because you didn't have a lawful arrest to get me for resisting arrest.
>
> (N.T. [Trial at] … 236-[]37, 239-[]40)[.]
>
> During the Commonwealth's closing argument, the prosecutor stated:
>
>> Because he wanted to fight. Because they didn't play it out the way he believes it should be played out. He made all kinds of admissions throughout the case. He said, ["]yeah, I was resisting arrest.["] Well, if you resist arrest, that act, those acts are, in this context, the same as obstructing, because resisting arrest is where - -

([***Id.*** at] 254)[.] At that point, [Appellant] objected[,] despite the fact that he had been advised by [the trial court] that objections would not [be] tolerated during closing arguments. As the trial court overruled the objection, tried to again explain that objections were not permitted[,] and warned [Appellant] that he would be removed from the courtroom if he continued, [Appellant] continued to interrupt by stating, "He's misquoting the law to the jury." The trial court then asked the deputy sheriff to remove [Appellant] from the courtroom. ([***Id.***] at 255)[.] The prosecutor went on to argue that because [Appellant] was never under arrest and not the subject of the investigation, the resisting arrest charge did not apply:

> [The Commonwealth:] I think that there are just some people that just like to fight with authority. That's just - - just the way it is. And - - and I - - I think that's what … [Appellant] is. And he had a perfect opportunity here, and he did that, and there - - these two officers were trying to figure out what happened in the VanVleck home. If he had been arrested for DUI, he could've been charged with resisting arrest. And he said, yeah, I - - I was resisting arrest. But he wasn't the subject of the investigation. He wasn't under arrest, so that charge wouldn't apply. But that same conduct, in this conduct - - in this context, is obstructing, because this investigation was about somebody else, about Shawn VanVleck. So, he's told you, yeah, I - - I did the conduct. He's trying to make you think that, well, you know, it was about me. It wasn't about him. It didn't become about him until after minutes and minutes of being there and [Appellant's] refusing to - - to comply with the very reasonable requests.

([***Id.*** at] 256-[]57)[.]

[Appellant], who was ultimately permitted to re-enter the courtroom, did ask for a side-bar at the close of the trial court's instructions to the jury. Following the side-bar discussion, the trial court stated the following to the jury:

> [The Court:] Understand that this trial today does not involve the charge of resisting arrest but only the charge of obstruction of law or other governmental function, which I had read to you the elements therein as to whether or not you are able to find [Appellant] guilty.

([***Id.*** at] 271)[.]

- 7 -

Once the jury retired to deliberate, the trial court placed o[n the] record the fact that [Appellant] had requested a clarification that his case involved the crime of obstruction and that is what prompted the additional instruction. [Appellant] then requested a mistrial because he was removed from the room for lodging an objection. The trial court responded as follows:

Understand that I told you repeatedly that there are not objections during the closing arguments…[.] When the Commonwealth was presenting their case, you objected. I said there's no objections during deliberations [*sic*]. You objected again. I corrected you. You objected a third time. At that point, you were disrupting this courtroom and our process and that closing. At that time, I opted to remove you. After the Commonwealth completed, I immediately spoke to your standby counsel and directed that I desired that you be present for all … the closing instructions by this [c]ourt and also for the elements of law[,] and directed that if you were - - would be able to behave yourself well, that you are more than welcome to be present. That was - - resulted in the affirmative, and you were here for the rest of the trial[.]

([***Id.*** at] 274-75)[.] The motion for mistrial was thereafter denied. The jury returned a verdict of guilty.

Commonwealth's Brief at 11-13.

Additionally, in the trial court's opinion, it explained why it had Appellant

removed from the courtroom, stating:

Throughout the Commonwealth's closing arguments, [Appellant] made numerous speaking objections interrupting the Commonwealth's arguments. This [c]ourt explained to [Appellant] that objections were not appropriate during closing arguments[,] but he persisted with his speaking objections. As such, he was escorted out of the [c]ourtroom until the Commonwealth concluded its arguments.

TCO at 5. Notably, the court stressed that Appellant "was not at any time

taken into custody, **handcuffed**[,] or chastised by the [c]ourt[,]" and his

"standby counsel remained in the [c]ourtroom the entire time." *Id.* (emphasis added).

Given this record, we conclude that Appellant's removal from the courtroom did not constitute misconduct or prejudicial error that warranted the 'extreme remedy' of a mistrial. Contrary to Appellant's argument on appeal, he was not handcuffed and, as the trial court stressed, he was not taken into custody or even chastised by the court. Moreover, prior to his removal, Appellant was repeatedly warned not to object during the closing arguments, yet he continued to do so. Appellant also persistently interrupted the court, and ignored the court's warning that he would be removed from the courtroom if he continued. This conduct justified the court's decision to remove him. Additionally, after Appellant was removed, he had standby counsel present in the courtroom during his absence, which belies his assertion that he was effectively denied his right to counsel. This Court has held that "a defendant may forfeit his right to be present for his trial and his right of self-representation through his behavior, but the trial court cannot continue proceedings (1) without a waiver of the right to representation, *or (2) protecting the right to representation through other means, such as by the substitution of standby counsel.*" *Commonwealth v. Tejada*, 188 A.3d 1288, 1298 (Pa. 2018) (emphasis added). Because Appellant's behavior justified the court's decision to remove him, and he had standby counsel in the courtroom during his brief absence, the court did not abuse its discretion in denying his motion for a mistrial.

Next, Appellant claims that the portion of the prosecutor's closing argument, to which he was attempting to object when he was removed from the courtroom, constituted misconduct. According to Appellant, the prosecutor misstated the law, and contradicted the jury instructions later provided, when he told the jury that "if you resist arrest, that act, those acts, are in this context, the same as obstructing." Appellant's Brief at 20 (quoting N.T. Trial at 254). Appellant contends that the prosecutor's "conduct can only be explained as an attempt to confuse the jury on the standard of the law and give them a[] reason to convict on the basis of [Appellant's] unruly conduct, rather than the elements of the law itself[,] which would have required a much higher degree of culpability." *Id.* Appellant insists that the prosecutor attempted to – and did – deprive him of a fair trial, and the prosecutor's misconduct rose "above ordinary negligence." *Id.* Therefore, he concludes that his conviction should be reversed, and the Commonwealth should be barred from retrying him. *See id.* at 21.

We disagree. We have elucidated our standard of review for a claim of prosecutorial misconduct as follows:

> The primary guide in assessing a claim of error of this nature is to determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury.

- 10 -

***Commonwealth v. Chmiel***, 777 A.2d 459, 464 (Pa. Super. 2001) (internal citations omitted).

It is also well-settled that,

[t]he Commonwealth is entitled to comment during closing arguments on matters that might otherwise be objectionable or even outright misconduct, where such comments constitute fair response to matters raised by the defense, or where they are merely responsive to actual evidence admitted during a trial. ***See Commonwealth v. Trivigno***, … 750 A.2d 243, 249 ([Pa.] 2000) (plurality opinion) ("A remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel[.]") (citing ***United States v. Robinson***, 485 U.S. 25, 31 … (1988)); ***Commonwealth v. Marrero***, 687 A.2d 1102, 1109 ([Pa.] 1996). Furthermore, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." ***Commonwealth v. Jones***, … 668 A.2d 491, 514 (1995).

***Commonwealth v. Culver***, 51 A.3d 866, 876 (Pa. Super. 2012). Additionally, "in order to evaluate whether … comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made." ***Id.*** at 873 (internal quotation marks and citation omitted).

Here, looking at the entire context of the Commonwealth's at-issue remark, we conclude that no relief is due. As discussed *supra*, following Appellant's removal from the courtroom, the Commonwealth continued its argument, as follows:

[The Commonwealth:] If he had been arrested for DUI, he could've been charged with [r]esisting [a]rrest. ***And he said, yeah, … I was resisting arrest.*** But he wasn't the subject of the investigation. He wasn't under arrest, so that charge wouldn't

> apply. But ***that same conduct, … in this context, is obstructing, because this investigation is about somebody else, about Shawn VanVleck***. So he's told you, yeah, … I did the conduct. He's trying to make you think that, well, you know it was about me. It wasn't about him. It didn't become about him until after minutes and minutes and minutes of being there and refusing to … comply with the very reasonable requests.

N.T. Trial at 256-57 (emphasis added). Essentially, the Commonwealth was simply arguing that by admitting he was 'resisting arrest,' Appellant had admitted that he committed the conduct that constituted the obstruction of the ***investigation*** into Shawn VanVleck. In other words, "[i]n referencing [Appellant's] admission that he was 'resisting arrest' the prosecutor permissibly sought to explain how [Appellant's] refusal to follow instructions, provide basic information[,] and answer questions constituted the crime of obstructing." Commonwealth's Brief at 23. Thus, in light of the Commonwealth's elaboration on what it meant by its initial, at-issue comment to which Appellant objected, we discern no misconduct by the Commonwealth.

Moreover, even if the prosecutor's comment had been improper, Appellant has failed to prove that it deprived him of a fair trial. Notably, the court instructed the jury on the elements of obstruction, stressing that the jury could not convict Appellant if it found "that he merely tried to avoid complying with the law without affirmatively attempting to interfere with a government function. The Commonwealth must prove something more … than just, for example, that [Appellant] fled from the scene of the crime, ***refused to submit to arrest***, or did not perform a legal duty." N.T. Trial at

268 (emphasis added). Then, at the close of the court's instruction, Appellant requested an additional explanation, and the court stated the following:

[The court:] Understand that this trial today does not involve the charge of resisting arrest but only the charge of obstruction of the administration of law … or other governmental function, which I read to you the elements therein as to whether or not you are able to find [Appellant] guilty.

*Id.* at 271 (unnecessary capitalization omitted). Appellant did not object to this additional instruction, or indicate it was insufficient in any regard. Accordingly, Appellant has not demonstrated that the extreme remedy of a new trial is warranted in this case.[1]

Finally, in Appellant's third issue, he contends that the Commonwealth failed "to establish a *prima facie* case in this matter." Appellant's Brief at 17. Specifically, Appellant argues that "[t]he conduct alleged … in this matter amounts to [r]esisting [a]rrest[,]" and "[r]esisting [a]rrest is specifically excluded from the conduct punishable by 18 Pa.C.S.[] [§] 5101." *Id.* He further notes that the "Standard Jury Instruction" for obstruction "states that the Commonwealth must prove something more than just, for example, that the defendant … refused to submit to arrest." *Id.* at 18 (quotation marks omitted). Appellant concludes his brief argument by stating: "The [c]onduct alleged in this case does not meet the elements of the offense charged on its face. The plain meaning of the language of the statute itself precludes a *prima*

_____

[1] Thus, we need not address Appellant's argument that his retrial is barred.

- 13 -

*facie* case. The case should have never been presented to the jury in the first instance." ***Id.***

Appellant has failed to prove that he is entitled to relief. Initially, our Supreme Court has held that a conviction renders moot any allegation that the Commonwealth failed to establish a *prima facie* case. ***See Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995) ("Lee's adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case with respect to the homicide" of the victim) (citing ***Commonwealth v. McCullough***, 461 A.2d 1229 (Pa. 1983) (finding that the fact that the Commonwealth did not establish a *prima facie* case of robbery at the defendant's preliminary hearing was immaterial, where the Commonwealth met its burden of proving the underlying offense at trial beyond a reasonable doubt)). Therefore, Appellant's claim that the Commonwealth failed to state a *prima facie* case was rendered moot by his conviction.

Moreover, even if we viewed Appellant's claim as an attempt to challenge the sufficiency of the evidence to sustain his conviction, his undeveloped argument would be unconvincing.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133[, 136] (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141[, 143] (Pa. Super. 2009). The evidence may be entirely circumstantial as

- 14 -

long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

The offense of obstruction is defined as follows:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S. § 5101.

Instantly, Appellant does not allege that the Commonwealth failed to prove any specific element of the offense of obstruction. Instead, he simply claims that his case falls under the 'resisting arrest' exception to that offense. However, Appellant does not explain how his conduct amounted to resisting arrest. For instance, he offers no argument to demonstrate that he was ***actually*** under arrest, or even that he ***believed*** he was being arrested, when he was impeding the officers in their investigation of Shawn VanVleck. Patrolmen Williams and Seibert both specifically testified that Appellant was ***not*** under arrest during the 12-minute interaction, wherein he refused to provide his identification, repeatedly yelled at the officers to get off his property, and refused to obey basic commands like turning around and removing his hands from his pockets. ***See*** N.T. Trial at 70, 110. Although Appellant was ultimately placed in handcuffs several minutes into the interaction, the officers testified that it was done because Appellant was

unruly, and they needed to investigate and secure the shotgun in the vehicle. *Id.* at 74, 110. Additionally, Appellant's step-father testified that he had discussed the incident with Appellant, and he denied that Appellant ever told him that the officers were trying to arrest him. *Id.* at 184. Based on this record and Appellant's undeveloped argument, he has not convinced us that his conduct fell under the 'resisting arrest' exception to the offense of obstruction. Accordingly, no relief is due on his final claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/07/2024