J-S11028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN GAUSMAN | : | |
| | : | |
| Appellant | : | No. 1258 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 29, 2024
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000508-2022

BEFORE: MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.: **FILED: June 13, 2025**

Appellant, Brian Gausman, appeals from the judgment of sentence entered in the McKean County Court of Common Pleas, following his jury trial convictions for one count each of rape, involuntary deviate sexual intercourse ("IDSI"), and sexual assault, and two counts each of incest of a minor and indecent assault.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On August 7, 2022, Officer Michael Henry responded to a report at Appellant's residence that Appellant was suicidal. Upon arrival, Officer Henry encountered S.G. ("Victim"), Appellant's biological daughter, who reported that her brother had inappropriately touched her. Based on this disclosure, Officer Henry took Victim to the police station to conduct an interview. During the interview,

---

[1] 18 Pa.C.S.A. §§ 3121(a), 3123(a), 3124.1, 4302(b), and 3126(a), respectively.

Victim reported that Appellant physically harmed her but did not disclose any instances of sexual abuse. Officer Henry gave Victim a form to write a statement outlining the abuse. On August 15, 2022, Victim wrote a one-page statement, which set forth instances of sexual abuse perpetrated by Appellant. Officer Henry reported the matter to McKean County Children and Youth Services ("CYS") and interviewed Victim again on August 28, 2022. On August 30, 2022, Victim provided another written statement, setting forth a more detailed account of the sexual abuse by Appellant. The Commonwealth charged Appellant with four counts of rape, ten counts of IDSI, four counts of incest of a minor, fourteen counts of sexual assault, and two counts of indecent assault.

The court conducted a jury trial on August 28, 2023. Victim, who was 18 years old at the time of trial, testified that she moved in with Appellant, her biological father, in 2021 after her mother passed away. She was 16 to 17 years old during the time that she lived with Appellant. She testified that the first occasion of inappropriate sexual conduct occurred when Appellant told her to lie next to him in bed. He held her tightly with his hands tight across her breasts. She told Appellant that she was uncomfortable and attempted to get up, but Appellant held her down. On another day, Appellant pulled her into her bedroom, picked her up and slammed her down on the bed. Appellant ordered her to unzip his pants and perform oral sex. When Victim stated that she did not want to, Appellant grabbed her cheeks and the back of her neck with his hands and physically forced Victim to perform oral

sex. Victim testified that Appellant forced her to perform oral sex approximately 30 to 40 other times. Victim further testified that on three or four occasions, Appellant held her down, called her derogatory names, and vaginally raped her. During these instances, Appellant did not wear a condom and ejaculated inside of Victim.

On cross-examination, Victim acknowledged that she initially reported to Officer Henry that her brother inappropriately touched her. She conceded that during her first interview with Officer Henry on August 7, 2022, she did not disclose that Appellant sexually abused her in any manner. Victim further acknowledged that she specifically denied that Appellant sexually abused her when Officer Henry asked her that question during this interview. When asked about her first written statement, Victim stated that she could not recall the date that she wrote it. Appellant's counsel showed her the written statement to refresh her memory and Victim affirmed that she wrote the statement on August 15, 2022. When asked if she disclosed any sexual abuse by Appellant in her first written statement, Victim testified that she could not recall. Appellant's counsel did not ask any further follow-up questions on this topic.

During re-direct examination, the prosecutor inquired again whether Victim disclosed sexual abuse by Appellant in her August 15, 2022 written statement. After looking at the statement to refresh her memory, Victim testified that she had reported instances of sexual abuse by Appellant in the statement. The prosecutor moved to admit the statement into evidence and Appellant's attorney objected on the grounds that the statement was

impermissible hearsay and contained irrelevant information that was prejudicial to Appellant. The court sustained the objection, noting that the statement contained inadmissible information about marijuana use that was prejudicial to Appellant. However, the court informed the prosecutor that she could continue to question Victim about the allegations Victim raised in the written statement to establish that it was consistent with her testimony at trial. The prosecutor showed Victim the August 15, 2022 written statement and asked Victim what she reported to the police in the statement. Thereafter, the following exchange took place:

> [Appellant's counsel]: Judge, she can't read it. You ruled that they couldn't admit it, so she can't just read the report.
>
>            *    *    *
>
> [Trial Court]: Hold on a minute. I'm sustaining the objection, but I am going to allow leading questions, just to make—clear because there has to be some leading to, to question about what's in there. So, it's sustained, but you may ask a question, specific question about what's in there.

(N.T. Trial, 8/28/23, at 82-83). Appellant's counsel did not object to the court's decision to permit leading questions. The prosecutor asked Victim a series of leading questions inquiring whether Victim wrote specific allegations against Appellant in her August 15, 2022 written statement, and Victim affirmed that she did. The prosecutor then showed Victim the written statement that was dated August 30, 2022. The prosecutor again asked a series of leading questions inquiring whether Victim raised specific allegations against Appellant in her second written statement. Appellant's counsel

- 4 -

objected and the following exchange took place:

> [Appellant's Counsel]: Your Honor, I want to renew my objection. This is purported to be refreshing her recollection. She's not even looking at the written statement. This is literally the district attorney reading her statement and she's saying yes, at this point.
>
> [Prosecutor]: This—
>
> [Trial Court]: It's not offered as refreshing the recollection. It's offered as a prior consistent statement, which I've already ruled it to come in.
>
> [Appellant's Counsel]: Can I note a secondary objection, then?
>
> [Trial Court]: Yes.
>
> *    *    *
>
> [Appellant's Counsel]: Again, we're asserting these are not consistent statements, these are statements that are inconsistent with many of the things that she said on the record here today. So, they're using a statement you [ruled] could not come in as hearsay, where the district attorney is literally reading the statement and she's saying yes. But, it's not even subject to cross examination.
>
> [Trial Court]: I—as I indicated, I allowed the [prosecutor] to ask some leading questions because there was an objection to the statement itself coming in, which I sustained. But I'm allowing—and then—when she was asked to read it, there was an objection, which I sustained. So, the only way to get that in and avoid having information [come] in that shouldn't because I've ruled in favor of defense counsel that there are some things in there that should not come in.
>
> It's to allow leading questions. Did you say this in that statement? Is it consistent? Is it inconsistent with what she's saying today? First of all, that's an issue for the finder of fact, not for me to make, but to the extent that I have to

> make a ruling for the record, I find that it is consistent enough to let the jury sort that out.
>
> Defense counsel can follow up with cross-examination on whether it is, in fact, consistent or not. But I shouldn't be making that call. So the objection's overruled.

(*Id.* at 87-89). After the prosecutor asked additional leading questions regarding Victim's prior written statement, Appellant's counsel again renewed his objection on the grounds that the prior written statements were hearsay and the contents that the prosecutor was questioning Victim about were neither prior consistent nor inconsistent statements. The court overruled the objection, and the prosecutor continued her line of questioning.

The Commonwealth further presented the testimony of Officer Henry and Timothy Crumrine, a CYS caseworker. The prosecutor asked a leading question to Mr. Crumrine regarding the contents of his report. Appellant's counsel objected on the basis that the question was leading. The court sustained the objection, stating, "No, I gave you latitude regarding the victim because there were things in her statement that shouldn't come in, but for him, it's direct." (*Id.* at 142). Appellant did not testify or present any witnesses in his defense.

The jury convicted Appellant of one count each of rape, IDSI, and sexual assault, and two counts each of incest of a minor and indecent assault. The jury found Appellant not guilty of the remaining charges. On August 29, 2024, the court sentenced Appellant to an aggregate 18 to 36 years' incarceration. Appellant timely filed a notice of appeal on September 27, 2024. On October

1, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on October 22, 2024.

Appellant raises the following issue for our review:

Did the trial court abuse its discretion in permitting the usage of leading questions to introduce alleged prior consistent statements at the time of trial?

(Appellant's Brief at 10).[2]

Appellant argues that the court impermissibly permitted the Commonwealth to ask leading questions to bolster Victim's testimony. Appellant asserts that the Commonwealth was permitted to question Victim about the allegations contained in her written statement, going through portions of the statement nearly line-by-line. Appellant claims that "the Commonwealth's use of these type of leading questions, which were essentially hearsay statements regurgitated by the [Commonwealth] in an attempt to generate trial testimony favorable to their argument, and not used for the purpose of refreshing the witness' recollection, denied [Appellant] a

---

[2] Appellant's counsel included three additional issues that Appellant wished to pursue on appeal in the statement of questions involved section of his brief. Nevertheless, Appellant's counsel conceded in the brief that after a conscientious review of the record, Appellant's three additional issues were either waived or without merit. As such, we do not address them herein. *See **Commonwealth v. Ratliff**, 328 A.3d 1042, 1051-52 (Pa.Super. 2024), (holding that this Court will not address issues that counsel concedes lack merit but raised on appeal at appellant's behest; reiterating that when counsel and appellant disagree on which issues should be raised and/or briefed on appeal, counsel must only raise and/or brief issues that counsel believes to be non-frivolous).

right to a fair trial." (Appellant's Brief at 29). Appellant concludes that the court abused its discretion on these grounds, and this Court should vacate the judgment of sentence. We disagree.

"A leading question is one which puts the desired answer in the mouth of the witness." *Commonwealth v. Lambert*, 765 A.2d 306, 357 (Pa.Super. 2000). Generally, "[l]eading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony." Pa.R.E.611(c). Nevertheless:

> The rule that a party calling a witness is not permitted to ask leading questions ... is [to be] liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical considerations of who called the witness. It is a discretion not susceptible of exactly defined limits before hand, but to be exercised in the interests of justice and a fair trial under the circumstances as they arise.

*Commonwealth v. Chambers*, 528 Pa. 558, 579, 599 A.2d 630, 640 (1991), *cert. denied*, 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992) (citation omitted). Accordingly, "[t]he trial [court] has wide discretion in controlling the use of leading questions." *Commonwealth v. Fransen*, 42 A.3d 1100, 1116 (Pa.Super. 2012), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013). "It is up to the trial court to decide to what extent it will tolerate leading questions on direct examination, and the defendant is not entitled to reversal except where the trial court has clearly abused its discretion." *Commonwealth v. Chmiel*, 777 A.2d 459, 469 (Pa.Super. 2001), *appeal denied*, 567 Pa. 736, 788 A.2d 372 (2001).

Instantly, Appellant initially failed to object to the court's ruling that the prosecutor could ask leading questions to elicit testimony from Victim about the relevant contents of her past written statements. After the court sustained Appellant's initial objection to the admission of Victim's written statements, Appellant did not object when the court stated that it would permit the prosecutor to ask leading questions to Victim. Appellant further did not object to the prosecutor's use of leading questions at any point while the prosecutor was questioning Victim. Rather, Appellant's objections were based on hearsay and that the allegations that the prosecutor was highlighting from the written statements were not prior consistent statements. The only time Appellant objected to the prosecutor's use of leading questions was while the prosecutor was questioning Mr. Crumrine, and the court sustained that objection. Accordingly, Appellant has failed to preserve his objection to the prosecutor's use of leading questions while questioning Victim, and his claim is waived on appeal. *See Commonwealth v. McGriff*, 160 A.3d 863, 866 (Pa.Super. 2017), *appeal denied*, 644 Pa. 372, 176 A.3d 853 (2017) (reiterating that party must make timely and specific objection at trial, and failure to do so results in waiver of that issue on appeal). *See also* Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal").

Moreover, Appellant would not be entitled to relief in any event. The court sustained Appellant's objection to the admission of the written

statements into evidence on the basis that the full written statements contained irrelevant information that could be prejudicial to Appellant. The court further ruled that the Commonwealth could ask Victim about relevant allegations that she made in the written statements to demonstrate that her past claims were consistent with her testimony at trial. To facilitate this ruling and limit the possibility that Victim would testify to contents in the written statements that were irrelevant and prejudicial to Appellant, the court permitted the prosecutor to use leading questions on a limited basis. The court's ruling was designed to protect Appellant's rights by preventing the jury from seeing or hearing irrelevant and prejudicial information while preserving the Commonwealth's right to present evidence of Victim's prior consistent statements. On this record, we cannot say the court abused its broad discretion to permit leading questions on direct examination as necessary to facilitate a fair trial. **See Chambers, supra** (holding trial court did not abuse discretion in permitting prosecutor to use leading questions during direct examination of 14-year-old witness to minimize risk that witness would unintentionally testify about unrelated allegations against appellant). As such, Appellant's claim on appeal is waived and would otherwise not entitle him to relief.[3] Accordingly, we affirm.

_____

[3] To the extent Appellant claims that the court erred in permitting the Commonwealth to question Victim about allegations in her written statements that were neither consistent nor inconsistent with her testimony at trial,
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

6/13/2025

---

Appellant's brief fails to develop this claim in any meaningful way with citations to relevant authority. Accordingly, this claim is waived. **See Commonwealth v. Johnson**, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009), *cert. denied*, 562 U.S. 906, 131 S.Ct. 250, 178 L.Ed.2d 165 (2010) (stating claim is waived where appellate brief does not include citation to relevant authority or fails to develop issue in any meaningful fashion capable of review).